The second appeal this morning is docket number 23-2188, BillJCo, LLC v. Apple Inc. May it please the court, Courtroom Merrill on behalf of Appellant BillJCo, LLC v. Apple The family of patents in question claims priority back to 2008 when smartphones were relatively still in their infancy. Patents disclose improvements for mobile systems to assist with receiving information and acting on location and user information in a safe manner. In particular, the claims of the 839 patent in question here, they claim improvements in receiving information and instructions together in what's referred to as an object. Now specific to the board's decision that we are appealing from, there are two claim limitations at issue here. The first is an object containing information and instructions for presenting information and the second claim limitation is a condition for detecting a particular user action. And here as to the first issue, the errors concerning an object containing information and instructions for presenting that condition, the board determined the single prior art reference, the Lutnick reference, discloses an object containing information and instructions. And implicit in that determination was a construction of an object as permitting both information and instructions. The petitioner's expert, Dr. Laporta, he admitted that the Lutnick reference does not disclose explicitly a self-contained object containing both information and instructions. And the petition itself defined the term object as a self-contained object containing information and instructions. So the board erred by implicitly. Can you help me? What do you think the construction of object is? You keep on saying self-contained object, but that's not what the claim language is, it's just object. So what's an object? An object is a unit, it could be a package of information, it could be broadly included, but it requires, based upon the claim construction set forth in the petition, it requires, and we accepted, we did not dispute below the claim construction of object, it was set forth in the petition. And it's stated in the petition that an object is a self-contained unit of information. We won't dispute the exact language, but it contains both information and instructions. And that's consistent with the invention that's described in the specifications. It talks about the improvement of this invention. My understanding is that is how the board understood this object limitation. So if, to the extent you want to characterize that as the board having engaged in an implicit claim construction, how is that a problem? The board doesn't explain that expressly. They state in the final written decision, page 7 of the appendix, that petitioner, according to petitioner, this is what the board states, that Lutnick teaches receiving a single object with information and instructions. And then the board states what we agree with, petitioner. So if it is true that the board construed an object the way it was set forth in the petition, then, which we, it's not clear, if that is true, then the board's decision lacks substantial evidence. It lacks substantial evidence because Lutnick does not disclose that, and it wouldn't, and the decision, the board, that it would have been obvious for a person spilling the arc to combine the two into a single, into a single object. That's not supported by substantial evidence. My understanding of the Laporta declaration and the petition's theory and the board's decision here on whether Lutnick discloses this object limitation is basically, yes, Lutnick does not explicitly state that there is an object where in a single package it includes both information and promotions. However, when you read these various paragraphs that are being cited and quoted from Lutnick, a person of skill in the art would understand that what Lutnick is describing there, although not explicitly stated, but nevertheless, the takeaway would be that these sorts of things can be transmitted together in a single package. And so, to that extent, that reasoning conforms with your understanding of what an object is, and also is a rationale for why Lutnick, in fact, meets this limitation, albeit not explicitly. If that's the construction that the board adopted, we would take issue and do take issue with the support for the rationale, the substantial evidence supporting the rationale. And this is where one of my concerns comes in with your appeal brief, which is, I didn't see your brief at, say, blue brief page 23, really engage with what the board was working through at A8 for the board's reasoning for why Lutnick does, in fact, disclose this object limitation. You know, according to the board, Lutnick teaches that some steps may be performed simultaneously, and that its promotional data includes an authorization code. And so, we agree with the petitioner that one skill in the art would understand that Lutnick teaches promotions and instructions for presenting the promotions may be combined in a single transmission, because Lutnick teaches the single, the claimed single object feature does not matter whether Lutnick also suggests an advantage for doing so. So, when I go to your blue brief at page 23, the sum and substance of your challenge to that is, number one, Lutnick doesn't expressly state the object limitation. And number two, Leporta admitted during his deposition that two particular paragraphs of the Lutnick reference doesn't actually disclose this limitation. But of course, that doesn't, that's an incomplete view, because Leporta and other parts of his declaration explains other pieces of Lutnick that meets this limitation. So, to the extent you're now arguing that whatever the board said lacks substantial evidence, I don't see that kind of reasoning contained in your blue brief right now, or your gray brief. Well, in response to the court's comments, I would say two things. One, we challenge in our brief that the evidence supports finding of substantial evidence. In particular, the paragraphs that Dr. Leporta relies upon, the paragraphs concerning, it may not be necessary to have the central server, the paragraphs of an authorization code, and the lack of need for a central server was Lutnick Paragraph 66. An authorization code was Lutnick Paragraph 48 and 93, which I'm certain we discussed in our blue brief. Those reference, those citations were not in the petition. We brought a motion to strike them, the board itself, cites to the reply brief, the board's decision, cites to the reply brief from the petitioner. We brought a motion to strike on that, but the board said it was moot because they're not going to rely upon the declaration of Dr. Leporta, his supplemental declaration. Can you remind me, so the board found that the reply brief was in fact responsive to your argument, right? Yes, in the board's decision, they said they're not going to rely upon it, and he said it was moot, is my understanding of what the board did. So still getting back to your question, Judge Chen, is number one, the evidence that they're relying upon wasn't part of the petition, and then we do take issue that the evidence that they relied upon supports the finding of substantial evidence to support that obviousness decision, that despite the express teaching of a single prior art reference or a single disclosure of an object, the references and the portions of Lutnick that Dr. Leporta relies upon is essentially a portion that says if there's a lack of connectivity, that's a good time to provide a promotion or an advertisement to the user. It says nothing about combining the advertisement with instructions in a single package. It doesn't get to a point where you could find substantial evidence. Now we're talking about would there be as an alternative basis of meeting this object would it have been obvious to modify Lutnick so that in fact does send the promotions and information together in a single package, right? That's correct, and that is what... So the board, when it was talking about this particular section, was agreeing with and concluding that the petition at petition pages 22 through 25 have sufficient evidence for making the case for an obvious to modify. And then when you look at those pages, not only did the petitioner rely on the idea of the connectivity theory from Lutnick, but also a more straightforward KSR theory, which is to say we already know from Lutnick it's sending the promotions. It's also sending this information related to the promotions. It would have been obvious to combine those two transmissions into a single package because these would just be the simple combination of known elements through known ways to produce a predictable result CKSR. So if we understand the board as having also accepted that understanding of why it would be obvious to modify Lutnick to meet the object limitation, then what would be your response to that? The portions of Lutnick that are relied upon by Dr. Laporta don't support his own theories about it would be obvious to combine common sense and whatnot because he's relying upon portions of Lutnick that don't support his overall conclusion. And for those reasons, it lacks substantial evidence. Your honors, I see my time is running out. I briefly want to just touch upon our second issue, and that is the issue of the claim limitation of a condition for detecting a user action. The board found that a user action here was a winning result in the gaming system. We've submitted that a winning result is not a user action. That's a result of the gambling system itself. Well, it's the result of the user action in the sense of the user pulling, say, a particular lever on the slot machine, right? It is a result of an earlier action by the user to either pull the lever, place a bet, an act of gambling, but that to get to the winning result, it's not the user's action, it's an action of gambling because as we all understand gambling, we hope it's fair, and it's the gambling system and the element of risk, the randomness of gambling. It's the action by the casino. Correct, and not the user. The Lutnick reference talks about the player has achieved a winning outcome, and I think that's what the board relied on in part in concluding that this is an example of a user action, the achievement of a winning outcome. I guess we have to ask ourselves why is that unreasonable such that we have to overturn the board's fact-finding there. The portion that was relied upon for that fact-finding, if you will, doesn't change the ultimate, what we know of the facts, that a winning result is not the result of the user, it's the result of the casino, and it doesn't meet the claim limitation. Let's reserve the remainder for your rebuttal. Good morning, your honors. May it please the court. Bill J. Coe's claim construction issues, as the court has noted, I don't need to be reached here because the board applied those constructions below, and substantial evidence supports the board's findings. With respect to the first issue raised of the object containing the information and the instructions, as the questions earlier highlighted, the board had two separate bases for this finding, both that looking at these teachings holistically, a person of ordinary skill in the art understands from the express disclosures of Lutnick that the instructions and the information, excuse me, the instructions and the promotion are provided from the casino server to the mobile gaming device, and a person of ordinary skill in the art understands from those teachings in paragraphs 119 and 290, for example, that's appendix 1364 and appendix 1385 to 1386, in addition to the other disclosures demonstrate that those are provided together as a single object. The board had the backup basis also, as the questions earlier noted, of obviousness, well supported by the disclosures of Lutnick itself and the testimony of Dr. Laporta, both paragraph 289 of Lutnick, that's at appendix 1385, discussing the motivation to provide those, the promotion and instructions together in case there's a disruption in communication, so that's all on board the mobile gaming device, as well as Dr. Laporta's testimony that was credited by the board at paragraph 89 and 90, that's appendix 1231 and 1232, explaining that because there's that motivation to, in case there is this disruption in communication, you'll want to provide both those things together, so they're already on board the mobile gaming device, and the board properly credited. I guess one thing I didn't quite understand about this loss of connectivity theory is, sure, maybe that's the reason for why you would want to send the instructions and the promotion ahead of time, but that doesn't really quite answer the question of why they would be sent together in a single package. Your Honor, I think there's one additional facet to that, that's paragraph 8183 of Lutnick, that's at appendix 1369, and that leads into the obviousness discussion in the petition as well, that's cited back by the board, and there it's disclosing that marketer device that's initially transmitting the promotion to the casino server before the casino server sends it out, that says expressly that it can transmit both the information describing the promotions to run, for example the graphics and audio associated with promotions, and when to run the promotions. So already, Lutnick is teaching expressly that those things are already packaged together when going from the marketer device. You think that statement means that they're being packaged together? Yes, Your Honor, I think that it's saying the marketer devices may transmit this information, and it's saying collectively the promotions as well as when to run those promotions. That's already packaged together, and then there's... It doesn't quite say it like that. It doesn't use the words packaged together, Your Honor, it just says they're transmitting both of those things. I think a person of ordinary skill in the art would have understood, which is the way it was argued below from that discussion, that they are... That particular passage is talking about what a marketing device can transmit to the casino server, but my understanding is your theory of Lutnick relies really on something, transmissions from the casino server to the mobile gaming device. Yes, Your Honor. Because it's the mobile gaming device that's the claim, whatever, receiving system, yeah. Yes, Your Honor, I completely agree. I offer this as... I think it was cited and relied on for the additional reason and rationale for why they would be packaged together if they are packaged together when going from the marketer device to the casino server, it makes sense to also package them together when going from the casino server to the mobile gaming device. Unless there's any further questions on that issue, Your Honor, I'll turn briefly to the user action issue. As the court noted in its earlier questions, the earlier argument emitted that key word that the board relied on here, achieved. It is the... As Lutnick discloses at paragraph 250, that's appendix 1379, the player has achieved a winning outcome. That is the user action that's detected, whether it's pulling the lever on the slot machine, rolling dice in the game of craps, whatever the exact game they were playing, there's a user action involved that's detected. These are all machine-operated gambling devices, is that right? That we're dealing with here in Lutnick? No, I don't think so, Your Honor. When the user achieves a winning outcome? Yes, Your Honor. A winning outcome where? Like on a slot machine or a other gambling machine? Lutnick describes a variety of circumstances in which that could arise. I guess what I'm trying to understand is, if they're all machines, we now know that modern day gambling machines, it's not completely random by chance, it's all pre-programmed. And so in that way, what we have is a processor that is in control. There's a random number generator inside those processors, but nevertheless, it's not something that the user has any kind of role to play. It's all kind of preordained inside the machine. Your Honor, I respectfully disagree. I think there are, Lutnick does discuss machine aspects to this where it could be electronic, but it's not limited to that. Even in paragraph 254 of Lutnick, which is at appendix 1380, it discusses spinning a wheel and having that land on a certain spot. Earlier on, the craps example, for example, was raised. That's at appendix 1364, excuse me, appendix 1365, paragraph 134. It talks about rolling dice in the game of craps. It's both machine operated as well as... How would the marketing device or casino server know that the player has achieved a winning outcome if we're really actually talking about a literal physical roulette table? That also would need to be reported back, Your Honor, through the gaming casino server to the device, Your Honor. Unless there's any further questions? The court's determination should be affirmed and the claims found unpatentable. Is there a co-pending litigation going on with these claims? Yes, there is, Your Honor. What's the status of that? I believe it's stayed, Your Honor. Okay, thanks. Thank you. Returning to the connectivity issue, the reason that was for combining the references that were stated in the petition, an obvious analysis requires a rationale. Connectivity just doesn't amount to what could be determined substantial evidence. The paragraph that they're relying upon concerning connectivity is, in fact, the paragraph that they're relying upon at LUTNIC 289. It just simply says, when there's a lack of connectivity, it's a good opportunity to present an advertisement. It says nothing about a reason to combine information and instructions. As to the marketer device and the information where allegedly the combination of information instructions, I think the court understands, but the marketer device sends to the centralized server. It doesn't send it to the mobile gaming device, which is the alleged receiving unit. And finally and lastly, LUTNIC does state that the user achieved a winning result. I may think that I have skills in slot machines or machine-operated gambling devices. The reality is, it's run by a machine. Thank you, Your Honor. Okay, thank you. The case is submitted.